## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
L. PAUL DIEFFENBACH, JR.       : CIVIL ACTION
                               :
          vs.                  :
                               : NO. 07-CV-3685
CIGNA CORP.                    :
```

### MEMORANDUM AND ORDER

JOYNER, J.                                    December   4  , 2007

        This case is once again before this Court for disposition of
the motion of Defendant, Cigna Corporation for sanctions against
Plaintiff pursuant to Fed.R.Civ.P. 11.  For the reasons which
follow, the motion is granted.

### Factual and Procedural History

        This case arises out of the termination of Plaintiff, L.
Paul Dieffenbach's employment as a computer operator with Cigna
subsidiary, International Rehabilitation Associates, a/k/a
Intracorp in August, 2002.  Prior to that time, Plaintiff alleges
that he had a "flawless work record" at Intracorp's facility in
Tredyffrin Township, Chester County, Pennsylvania where he had
commenced working in April, 1990 at the age of 44.  (Pl's
Complaint, ¶s1-3).  Plaintiff's termination was ostensibly
precipitated by Intracorp's decision to close the Tredyffrin
facility and move the data processing operations which were being
done there to a facility in Hartford, Connecticut.  At the time

of his termination, Plaintiff was 56 years old.  He was one of eight employees terminated.  (Complaint, ¶s5-6).

Prior to his discharge, Plaintiff was informed that he was entitled to a severance package which consisted of two weeks' continuation of salary and benefits for every year on the job. As a pre-condition to receiving these severance benefits however, Cigna required Plaintiff to sign a general liability release.  In signing this release, Plaintiff would waive, *inter alia*, any and all claims he may have had against Cigna for age discrimination. (Complaint, ¶7).  Plaintiff alleges that he was the only employee terminated for whom two new employees, aged 26 and 29, were hired in replacement.  (Complaint, ¶6).  Plaintiff was therefore very reluctant to execute the required release, taking the position that requiring the execution of a release to obtain severance benefits was a violation of Pennsylvania state law and policy.

Not surprisingly, the relationship between Plaintiff and Defendant quickly soured with the result that on October 11, 2002, Mr. Dieffenbach instituted a civil action before District Justice John Anthony in Devon, Pennsylvania to recover the sum of $3,794.66 in severance benefits and for what he believed to be an unlawful wage garnishment from Intracorp. (Complaint, ¶s8-9; Exhibit 1 to Defendant's Motion to Dismiss).  Although unclear from the records and docket entries before us, it appears that that case was at some point appealed or re-filed in the Chester

2

County Court of Common Pleas.  In any event, the matter was ultimately removed to this Court and docketed at No. 02-CV-7903.

Because Plaintiff had, on January 21, 2000 signed a receipt for Employee Handbook in which he agreed to arbitrate all disputes arising out of his employment with Intracorp/Cigna, Judge Weiner granted the defendant's motion to compel arbitration and stayed all proceedings pending the outcome of arbitration. (Memorandum and Order dated December 23, 2002 in Civil Action No. 02-7903).  Plaintiff endeavored to overturn that ruling by filing a petition for writ of mandamus with the U.S. Court of Appeals for the Third Circuit which denied the petition in a per curiam opinion dated March 6, 2003.  Mr. Dieffenbach again tried to convince Judge Weiner of the error of his ways by filing three motions--two for summary judgment on what he captioned his unlawful garnishment claim and on his unlawful withholding of ERISA benefit claim and one for relief from obligation to arbitrate.  Judge Weiner denied all of these motions via Order dated September 10, 2003 and again ordered the parties to arbitration.

Subsequently, on or about October 31, 2003, Mr. Dieffenbach and Intracorp entered into an "Agreement and Release" pursuant to which Plaintiff received $15,000 in severance pay, $1,500 in interest and $1,044.96 for the previous wage garnishment in exchange for, *inter alia,* his release of essentially all legal

claims against Defendant save for any "non-waivable claims brought before any governmental agency" and "any claim you may file alleging that your waiver of claims under the Age Discrimination in Employment Act of 1967 ("ADEA") was not knowing or voluntary."

Sadly, the execution of the release did nothing to end the matter as Plaintiff thereafter argued that his ERISA and Age Discrimination claims were alive and well despite his having received some $17,545 in settlement funds.  Plaintiff apparently did not object to these issues then being heard by an American Arbitration Association arbitrator who ultimately determined that Plaintiff's execution of the Agreement and acceptance of the monies paid released his ADEA and ERISA claims as well. (Decision of Ralph Colflesh, Jr., Esquire, dated 1/27/04).  Plaintiff thereupon filed a motion to quash the arbitrator's award which the undersigned, having by then been re-assigned the case, denied in an Order dated August 12, 2004.  On October 18, 2005, this decision was upheld by the Third Circuit and Plaintiff's request for re-hearing before that Court was denied on November 16, 2005. Plaintiff apparently sought to have the matter further reviewed by the U.S. Supreme Court which denied certiorari, although it is not clear from the records before us as to exactly when it did so.

Nothing further was heard from Mr. Dieffenbach on this

4

matter until July 31, 2007 when he again filed suit in the Court
of Common Pleas of Chester County alleging that Cigna unlawfully
discriminated against him on the basis of his age when it
terminated him in August, 2002 from his job as a computer
operator and thereafter unlawfully conditioned his receipt of
severance benefits on his execution of a release of his age
discrimination claim.  Defendant then removed that case to this
Court and moved to dismiss on the grounds that the plaintiff's
claims had already been fully and finally litigated.  Plaintiff
filed a cross-motion to deny removal and remand the matter to
state court.  Following hearing on October 4, 2007, we granted
the defendant's motion to dismiss on the grounds that the second
action was clearly barred by *res judicata*[1] and denied the
plaintiff's motions.  (<u>See</u>, Order dated October 15, 2007).

Some two weeks after filing its motion to dismiss the
plaintiff's complaint, Defendant filed the instant motion for

---

[1]  Indeed, the plaintiff himself acknowledged at the hearing/oral
argument before the undersigned on October 4, 2007 that the within action is
the same as that previously litigated to conclusion.  What's more, the Court
specifically cautioned him that he was subjecting himself to potential
sanctions:

> THE COURT: --because of the circumstances that you present to the Court
> initially, you expose yourself to significant sanctions if this Court
> does not grant your motion to send this back to state court, because the
> allegations that you're raising -- the factual allegations spring from
> the same time - would you agree with me, the same time period that the
> previous action that was decided by this Court?

> MR. DIEFFENBACH: Oh, it's the same action.  I make no bones about that.
> It's the same cause - underlying cause of action.

(N.T. 10/4/07, at p. 4).

sanctions under Rule 11 against Plaintiff.  Three weeks before it
filed the Rule 11 motion with the Court, Defendant forwarded a
copy of that motion to the plaintiff under cover of letter dated
September 11, 2007 advising that the motion would be filed unless
the plaintiff withdrew his complaint.  (<u>See</u> Exhibit 4 to
Defendant's Memorandum of Law in Support of Motion for
Sanctions).  Plaintiff has refused to withdraw this action
despite this Court's numerous admonitions to him over the course
of the October 4th argument hearing that he could be facing
significant monetary sanctions were he to continue.  (N.T.
10/4/07, 15-25).  Accordingly, the sanctions motion is now ripe
for disposition.

## <u>Discussion</u>

It is clear that the central purpose of Rule 11 of the
Federal Rules of Civil Procedure is to deter baseless filings in
district court and thus streamline the administration and
procedure of the federal courts.  <u>Cooter & Gell v. Hartmarx
Corp.</u>, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359
(1990).  In this way, Rule 11 is aimed at curbing abuses of the
judicial system.  <u>Id</u>., 496 U.S. at 397, 110 S.Ct. at 2457.  To
this end, it sets up a means by which litigants certify to the
court, by signature, that any papers filed are well founded.
<u>Business Guides v. Chromatic Communications</u>, 498 U.S. 533, 542,
111 S.Ct. 922, 928, 112 L.Ed.2d 1140 (1991).  Indeed, Rule 11

provides the following in relevant part:

**(a) Signature.**  Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any.  Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit.  An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

**(b) Representations to Court.**  By presenting to the Court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that, to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

**(c) Sanctions.**  If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

7

**(1) How initiated.**

> **(A) By Motion.**  A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).  It shall be served as provided in Rule 5, but shall not be served with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.  If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion...

> **(B) On Court's Initiative.**  On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

**(2) Nature of Sanction; Limitations.**  A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

> **(A)** Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

> **(B)** Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

8

> **(3) Order.** When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

...

Rule 11 thus authorizes the imposition of sanctions upon the signer of any pleading, motion or other paper that was presented for an improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or when the claim or motion is patently unmeritorious or frivolous. Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995); Doering v. Union County, 857 F.2d 191, 194 (3d Cir. 1988). In short, the text of Rule 11 "imposes on any party who signs a pleading, motion, or other paper ... an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing..." Business Guides, 498 U.S. at 551, 111 S.Ct. at 933. That Rule 11 applies with equal force to *pro se* as well as represented litigants naturally follows from the inclusion of unrepresented parties in the language of the rule. See, e.g., In re Armstrong, Civ. A. No. 01-MC-130, 2001 U.S. Dist. LEXIS 9769 at *11 (E.D. Pa. July 10, 2001).

In evaluating claims under Rule 11, courts are to adhere to the standard of "objective reasonableness under the circumstances." Business Guides and In re Amstrong, both supra. A finding of bad faith is not required. Martin v. Brown, supra. See Also, Chambers v. Nasco, Inc., 501 U.S. 32, 47, 111 S.Ct.

2123, 2134, 115 L.Ed.2d 27 (1991)("Rule 11, for example, imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith," citing <u>Business Guides</u>, 498 U.S. at 548-549, 111 S.Ct. at 931-922).  Although in applying this criterion, the Committee Notes to the rule emphasize that the "court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion or other paper was submitted." <u>Gaiardo v. Ethyl Corp.</u>, 835 F.2d 479, 484 (3d Cir. 1987)(quoting 1983 Advisory Committee Notes).  "Notwithstanding the emphasis on the time of initial submission, however, parties will not be entitled to continuing immunity if they acquire or should acquire knowledge under the Rule's standard before a later filing.  Subsequent papers must be judged by information available when they are filed." <u>Id</u>.

In considering the motion which is now before this Court, we find that the defendant's counsel has complied with the due process requirements of the rule in that the record confirms that prior to filing the within motion he wrote to Mr. Dieffenbach to confirm his understanding that the plaintiff was indeed trying to re-assert his claims that his employment was terminated on the basis of his age and that the defendant's conditioning of the receipt of his severance benefits on the execution of a release of claims was in violation of Pennsylvania law and/or policy.

Mr. Dieffenbach confirmed that this understanding was correct. Thereafter, on or about August 24, 2007, the defendant's counsel sent correspondence advising the plaintiff that unless he withdrew his state court action, he would have no alternative but to file a motion for sanctions under either Rule 11 or the Pennsylvania Dragonetti Act, 42 Pa.C.S. §8371.  Plaintiff refused and Defendant thereupon removed the action to this Court and served a copy of his proposed Motion for Rule 11 Sanctions upon the plaintiff on or about September 11, 2007.  That same day, Defendant filed its motion to dismiss.  Plaintiff took no action to voluntarily discontinue this action and on October 2, 2007, the defendant formally filed the motion for sanctions.

As discussed earlier, the parties appeared before the undersigned for oral argument/hearing on the motions on October 4, 2007.  At that time, Mr. Dieffenbach repeatedly acknowledged that he knew that the matters which he was again bringing before the Court were the same as those which he raised in the earlier (02-CV-7903) action.  This Court repeatedly advised Mr. Dieffenbach that he could be subjecting himself to significant monetary penalties if he continued to pursue this litigation as it is an action that has already been ruled upon not only by the District Court, but also by the Third Circuit and upon which the U.S. Supreme Court refused to accept *certiorari.*

Following this hearing, we issued an order directing Mr.

Dieffenbach to show cause why he should not be sanctioned in the amount sought by Defendant - $10,000.  The plaintiff has responded by arguing that because he filed his complaint initially in the state court, he cannot be subjected to Rule 11 sanctions and by filing yet another "Notice of Withdrawal of Original Complaint and Substitution of Amended Complaint" in which he makes the same arguments which he made at the time that he filed his motion to deny removal and remand the matter to state court.

The question of the applicability of Rule 11 in a removal case where the defendant seeks sanctions for the filing of a state court complaint is an unresolved one in this circuit. There appears to be a split among the other circuits on the issue with the Second, Fourth and Fifth Circuits holding that Rule 11 sanctions cannot be imposed on state court complaints, while the Sixth Circuit has held that they can.  See, e.g., Tompkins v. Cyr, 202 F.3d 770 (5th Cir. 2000); Herron v. Jupiter Transportation Co., 858 F.2d 332, (6th Cir. 1988); Kirby v. Allegheny Beverage Corp., 811 F.2d 253 (4th Cir. 1987); Stiefvater Real Estate, Inc. v. Hinsdale, 812 F.2d 805 (2d Cir. 1987).  The only Court in this district to consider the matter, however, followed the 6th Circuit to conclude that the fact that the case was removed from state court had no bearing on the application of Rule 11, which applies to a pleading once it is

12

removed to federal court and thereby imposes upon the attorney a
duty to reevaluate his signed pleadings once they are in federal
court.  See, Riley v. City of Philadelphia, 136 F.R.D. 571, 574
(E.D. Pa. 1991).

We do not believe that we need to reach the issue of whether
Rule 11 is properly applied to pleadings originally filed in the
state court to resolve the motion now before us.  While it was
the plaintiff's filing of a complaint in the Chester County Court
of Common Pleas which once again initiated these proceedings in
July, 2007, it is the plaintiff's continuing insistence on the
prosecution of this matter and his repeatedly signing papers,
motions and amended pleadings *in this Court* which is at the heart
of the Rule 11 motion before us.  Indeed, it is crystal clear
that Mr. Dieffenbach simply refuses to accept the rulings of the
arbitrator, the district courts and the Court of Appeals that by
voluntarily agreeing to settle his earlier action, accepting the
settlement monies and executing a release, he has concluded his
right to further litigate his age discrimination and severance
benefits claims.  It is equally clear that in continuing his
efforts to litigate these claims in this court Mr. Dieffenbach
has made absolutely no efforts whatsoever to ascertain whether
his actions are permissible under existing law or that his
endeavors may reasonably result in a change in the extension,
modification, or reversal of existing law or the establishment of

13

new law.  As noted above, the plaintiff rather incredibly just continues to re-file the same complaint and motions over and over again despite numerous warnings from both this Court and defense counsel.   We therefore find that sanctions are properly granted under Rule 11.

However, although we have given Plaintiff ample opportunity to show cause why he should not be sanctioned in the amount of $10,000, we note that he has produced no evidence of his financial ability to pay such an award and that the defendant has presented us with no evidence as to why $10,000 is an appropriate amount (aside from its counsel's contention that the fees which his client has incurred are in excess of that sum).  For these reasons, we shall give the parties an additional thirty days to file supplemental submissions.

An order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


L. PAUL DIEFFENBACH, JR.       : CIVIL ACTION
                               :
            vs.                :
                               : NO. 07-CV-3685
CIGNA CORP.                     :


### ORDER

_____AND NOW, this      4th      day of December, 2007, upon consideration of Defendant's Motion for Sanctions (Docket No. 10) and Plaintiff's Responses thereto and following hearing in this matter, it is hereby ORDERED that the Motion is GRANTED and Defendant is DIRECTED to, within twenty (20) days of the entry date of this Order, provide evidence of the counsel fees and expenses which it has incurred in defending this action to date and a supplemental brief on why monetary sanctions are appropriate.  Thereafter, ten (10) days after Defendant's submissions, Plaintiff is DIRECTED to provide evidence of his income, assets and ability to reimburse Defendant for the reasonable expenses which it has incurred in defending this action and a supplemental brief on what alternative sanctions, if any, may be appropriate in this matter.

                                    BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER,        J.

16